25-1292
*In re Mobileye Global Sec.*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 16th day of December, two thousand twenty-five.

PRESENT:
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> > *Circuit Judges*,
> SIDNEY H. STEIN,[*]
> > *District Judge*.

_____

IN RE: MOBILEYE GLOBAL SECURITIES LITIGATION

_____

RETIREMENT PLAN FOR CHICAGO TRANSIT
AUTHORITY EMPLOYEES,

> *Lead-Plaintiff-Appellant*,

_____

_____

[*] Judge Sidney H. Stein, of the United States District Court for the Southern District of New York, sitting by designation.

OKLAHOMA FIREFIGHTERS PENSION AND
RETIREMENT SYSTEM,

       *Plaintiff-Appellant,*

JOHN MCAULIFFE, Individually and On Behalf
of All Others Similarly Situated,

       *Plaintiff,*

TUNG LEE, Individually and On Behalf
of All Others Similarly Situated,

       *Consolidated-Plaintiff,*

       v.                              No. 25-1292

MOBILEYE GLOBAL INC., AMNON SHASHUA,
MORAN SHEMESH ROJANSKY, ANAT HELLER,
DANIEL GALVES,

       *Defendants-Appellees.*[†]

_____

| | |
|---|---|
| FOR PLAINTIFFS-APPELLANTS: | JOHN J. RIZIO-HAMILTON (Avi Josefson, Mathews R. de Carvalho, *on the brief*), Bernstein Litowitz Berger & Grossmann LLP, New York, NY. |
| FOR DEFENDANTS-APPELLEES: | DANA M. SESHENS (Daniel J. Schwartz, *on the brief*), Davis Polk & Wardwell LLP, New York, NY. |

_____

  [†] The Clerk's office is respectfully directed to amend the caption as reflected above.

Appeal from a judgment of the United States District Court for the Southern District of New York (Cote, *Judge*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of dismissal entered on April 16, 2025, is **AFFIRMED**.

Plaintiffs appeal from a judgment dismissing their putative class action asserting claims under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b), 78t(a); Rule 10b-5, 17 C.F.R. § 240.10b-5; and §§ 11 and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77k, 77(o). They allege that, during the class period between January 26, 2023, and August 1, 2024, Mobileye and several executives failed to disclose an alleged "channel-stuffing scheme" through which Mobileye had used its market power to compel its customers to execute annual minimum commitment contracts to purchase EyeQ chips—its flagship product— at levels exceeding actual demand, so that Mobileye's reported revenues were misleading because they were attained by "cannibalizing future growth." App'x 72. Their Exchange Act claims are predicated primarily on a series of statements that Plaintiffs allege were false or misleading in light of these practices, as well as on an alleged scheme to defraud. Their Securities Act claims are based on

misstatements and a failure to disclose these practices in connection with a June 2023 secondary public offering.

The district court dismissed both sets of claims, and Plaintiffs appealed. We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision.

*1. Exchange Act Claims*

We review the district court's dismissal of the Exchange Act claims without deference to the district court's reasoning. *See ECA and Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). We also accept all factual allegations as true and draw all reasonable inferences in favor of the plaintiff. *Id.* A complaint alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). In addition, under the Private Securities Litigation Reform Act of 1995, or "PSLRA," it must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). And it must "state

4

with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id.* § (b)(2)(A).

To state a private securities fraud claim under § 10(b) and the corresponding Securities and Exchange Commission (SEC) Rule 10b–5, 17 C.F.R. § 240.10b–5, a plaintiff must plausibly allege, among other things, "a material misrepresentation or omission by the defendant." *Stoneridge Investment Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 157 (2008).[1] Generic statements of corporate optimism or puffery, forward-looking statements, and opinions are generally non-actionable. *See, e.g., In re Vivendi*, 838 F.3d 223, 243–246 (2d Cir. 2016); *Tongue v. Sanofi*, 816 F.3d 199, 210 (2d Cir. 2016). "To determine whether a statement is misleading, our inquiry is objective, from the perspective of a reasonable investor," and to be actionable, "there must be a substantial likelihood that the statement or omission would have been viewed by the reasonable investor as having significantly altered the total mix of information made available." *Gimpel v. The Hain Celestial Group, Inc.*, 156 F.4th 121, 139 (2d Cir. 2025).

---

[1] In quotations from caselaw and the parties' briefing, this summary order omits all internal quotation marks, footnotes, and citations, and accepts all alterations, unless otherwise noted.

5

The district court dismissed Plaintiffs' claims on the basis that they failed to allege any actionable material misrepresentation. We agree. First, they have not identified any material misrepresentations regarding Mobileye's use of minimum commitment contracts in 2022 and 2023. Plaintiffs allege that statements in Mobileye's 2022 Form 10-K, issued in March 2023, were misleading because they suggested that Mobileye's shipments to its customers would "depend upon market conditions." Appellants' Br. at 14. But the Form 10-K statement as a whole belies that assertion. The Form noted that Mobileye generally does not have minimum commitment contracts with customers, but said that some of their customers, *including* their "top three Tier 1" customers, "committed to purchasing minimum quantities of certain solutions in 2023." App'x 200. The Form further explained that, in prior periods, certain Tier 1 customers increased their orders, and that Mobileye expected "these Tier 1 customers will utilize accrued inventory on hand before placing new orders to meet the demand of [their downstream customers] in current or future periods." *Id.* The same analysis applies to similar statements in Mobileye's 2023 Form 10-K.

In light of these disclosures, we see nothing misleading in Mobileye's statement that, although it secured minimum purchase commitments from

customers, Mobileye was not itself obligated to supply fixed volumes and the volumes it ultimately supplied would "depend upon market conditions." *Id.* at 199; *see also id.* at 435. This statement referred to market conditions affecting Mobileye's ability to *supply* the agreed-upon quantities. Nor was the disclosure misleading because Mobileye did not identify which of its two primary products were subject to these minimum commitment contracts (EyeQ, Supervision, or both) or disclose the specific volumes subject to minimum commitment agreements. The absence of such granular detail did not render Mobileye's statements misleading. *Cf. Setzer v. Omega Healthcare Investors, Inc.*, 968 F.3d 204, 214 n.15 (2d Cir. 2020) (Once a company speaks on a topic, it must "tell the whole truth," meaning that it may not "omit material facts" necessary to make its statement not misleading, not that it must "disclose all the facts that pertain to a subject.").

Second, Plaintiffs have not plausibly alleged that various statements by Mobileye executives in April and July 2023 regarding stabilization of EyeQ orders from quarter to quarter were materially false. In an April earnings call, a Mobileye executive explained that Mobileye was in discussions with Tier 1 customers who were subject to yearly commitments in an effort to balance those customers' orders

7

from quarter to quarter, "rather than lumping it into 1 or 2 quarters towards the end of the year." App'x 244. Then, in a July earnings call, the same executive reported that requests to move volume around had largely ceased and said inventory that Mobileye "customers have piled up in terms of EyeQs . . . has stabilized." App'x 493. He explained: "We don't see any requests to push volumes from quarter to quarter." *Id.* There is no allegation that these reports of fluctuation and then stabilization of quarterly orders by customers subject to minimum purchase contracts were untrue. Nor have Plaintiffs identified any omitted fact whose absence renders these statements, read together, misleading. *See Setzer*, 968 F.3d at 214 n.15. Rather, Plaintiffs contend only that the statements failed to disclose that it was "impossible" for customers to adjust the quantities, App'x 23—but that fact was apparent from the disclosure of the minimum commitment contracts.

Third, Plaintiffs have not alleged that Mobileye's statements about various performance measures, such as its growth relative to prior guidance, were actually *false*. Rather, they allege that the statements were *misleading* because they attributed the growth "to legitimate market demand." Appellants' Br. at 33. But the identified statements do not do so; and, again, Mobileye consistently disclosed

8

that (1) its main Tier 1 customers were subject to minimum commitment contracts and (2) at some point, Tier 1 customers were expected to use accrued inventory before placing new orders from Mobileye. Against this backdrop, its accurate reporting of its performance metrics is not misleading. For similar reasons, Mobileye's January 2024 estimate that accumulated excess inventory levels contributed "1% or 2%" to its prior market share does not render past market share data false or misleading.

Fourth, none of Plaintiffs' allegations render misleading Mobileye's statements attributing excess customer inventory in part to customers' decisions to increase orders in 2021 and 2022 to avoid parts shortages caused by COVID-related supply chain interruptions. There is no allegation that customers did not, in fact, increase their orders during those years to avoid potential supply chain disruptions. Nor is there an allegation that, when these customers entered into minimum commitment contracts, they agreed to purchase a greater volume of EyeQ chips than they actually wanted or that Mobileye knew that the contracts would result in shipping greater quantities than needed; rather, the supported allegations suggest that once they had entered into the contracts, some customers sought to reduce their commitments. Plaintiffs' assertion that the customer excess

9

inventories were caused primarily by Mobileye's alleged channel-stuffing practices, rather than by customers' prior purchasing decisions in combination with minimum purchase obligations and declining downstream market demand, is not supported by any non-conclusory allegation.

Nor were the statements materially misleading. Mobileye did not identify customers' decisions in 2021 and 2022 to build inventory as the sole cause of the excess; it also pointed to lower-than-expected downstream production during 2023. And, as noted above, Mobileye had long disclosed that, in 2022 and 2023, some of its Tier 1 customers were subject to minimum commitment contracts.

Fifth, a number of the challenged statements are non-actionable because they are forward-looking. *See In re Vivendi*, 838 F.3d at 245–246. This includes statements in Mobileye's 2023 Form 10-K expressing its expectation that customers would use the vast majority of their excess inventory in the first quarter of 2024, and that customer orders would normalize over the remainder of the year, while cautioning that "there is no guarantee that they will do so." App'x 435. It also includes statements in a January 2024 earnings call about Mobileye's projected market share through the decade and the growth possibility in Western markets.

Finally, understood in context, the challenged statement by a Mobileye executive at a February 2023 conference is an inactionable opinion and forward-looking statement. A questioner asked about Mobileye's ability to sustain its market share over the coming years in the face of increasing competition. As a closing point, the Mobileye executive noted that downstream manufacturers have to "super-cost optimize." App'x 608. He said:

> And our Tier 1s have so much capacity to buy cameras, put them into housings, take our chip, put them on to the PCB board and deliver it to the [downstream manufacturers] that – we think that our ecosystem is also the cost leader pretty significantly. So we – it's a very kind of long visibility business, so we feel comfortable with our share.

*Id.* This statement did not relate to customers' then-current inventories or their immediate capacity to absorb additional EyeQ chips; rather, it addressed their longer-term ability to use Mobileye's chips to deliver products downstream in a cost-effective way.

We also reject Plaintiffs' alternative contention that, wholly apart from any specific misrepresentations, Mobileye and the named executives are liable under Rules 10b-5(a) and (c) for "scheme liability" arising from their alleged channel-stuffing practices. To plead scheme liability, Plaintiffs must allege "something

11

*beyond* misstatements and omissions" that renders the challenged conduct a scheme to defraud. *Security and Exchange Commission v. Rio Tinto*, 41 F.4th 47, 49 (2d Cir. 2022); *see also id.* at 53. They have not done so. Minimum commitment contracts are not unlawful. And Mobileye disclosed their presence here. Plaintiffs have not adequately pled scheme liability under either subsection of Rule 10b-5.

For these reasons, the district court properly dismissed Plaintiffs' Exchange Act claims, along with the accompanying control-person claims. *See ATSI Communications, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007) (control-person liability under § 20(a) requires an underlying primary violation).

2. *Securities Act Claims*

We review the district court's dismissal of the Securities Act claims without deference to the district court's reasoning. *See ECA*, 553 F.3d at 196. When evaluating claims under § 11 of the Securities Act based on alleged misstatements or omissions in a registration statement, the ordinary Rule 8(a) notice-pleading standard applies where the claims sound in negligence, and the heightened Rule 9(b) pleading standard applies where the claims sound in fraud. *See Hutchison v. Deutsche Bank Securities Inc.*, 647 F.3d 479, 484 (2d Cir. 2011). Under either standard, Plaintiffs fail to state a claim.

To plead a § 11 violation, Plaintiffs who purchased a registered security from the issuer or in the aftermarket following a public offering must plausibly allege, among other things, that "the registration statement contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading." *In re Morgan Stanley Information Fund Securities Litigation*, 592 F.3d 347, 358–59 (2d Cir. 2010) (quoting 15 U.S.C. § 77k(a)).

Plaintiffs allege both material misstatements and omissions, including omissions of information they contend was required under Items 303 and 105 of SEC Regulation S-K. Item 303 requires disclosure of "known trends or uncertainties" reasonably expected to have a material "unfavorable impact" on revenues. *Panther Partner Inc. v. Ikanos Communications, Inc.*, 681 F.3d 114, 120 (2d Cir. 2012); 17 C.F.R. § 229.303. Item 105 requires disclosure of factors that make an investment in the offering "speculative or risky." 17 C.F.R. § 229.105.

Like the district court, we conclude that Plaintiffs failed to allege any actionable material misrepresentation or omission for purposes of their Securities Act claim. First, Plaintiffs identify no materially false or misleading statements in the offering documents or the SEC filings incorporated by reference. To the extent

13

that they point to statements discussed above, including statements in the 2022 Form 10-K that was part of the SEC filing for the June 2023 public offering, Plaintiffs' claims fail for the reasons set forth above.

Second, Plaintiffs fail to allege an actionable omission under Item 303. *See* 17 C.F.R. § 229.303. Plaintiffs contend that Mobileye was required to disclose the "known trend[] or uncertaint[y]" that excess EyeQ inventories held by Tier 1 customers posed a risk to future revenue. But Mobileye did disclose this supposed trend. As noted above, the offering documents stated that certain Tier 1 customers were party to minimum commitment contracts, had increased orders in prior periods, had accumulated inventory, and were expected to use that inventory before placing new orders. Because the registration statement disclosed the alleged trend, Plaintiffs cannot state an Item 303 claim.

Third, Plaintiffs identify no actionable omission under Item 105, which requires disclosure of the factors that make an investment in the offering "speculative or risky." *See* 17 C.F.R. § 229.105. The offering materials warned that Mobileye depended on a small number of Tier 1 customers, warned that order volumes could fluctuate, and, as noted above, disclosed the minimum commitment contracts and accrued inventories that were expected to impact new

orders.  Plaintiffs' contention that the offering documents should have described the precise volume of inventory build-up reflects a preference for more detailed disclosure, not an omission of a "significant" risk under Item 105.

Because Plaintiffs fail to state a primary violation under § 11, their control-person claim under § 15 of the Securities Act necessarily fails.  *See ECA*, 553 F.3d at 207.

* * *

For these reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

15